# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **CALDWELL MEMORIAL HOSPITAL, INC.** | * | **CIVIL ACTION NO. 06-1319** |
| **VERSUS** | * | **JUDGE JAMES** |
| **TRIMARK CATASTROPHE SERVICES, INC., HERMITAGE INSURANCE CO., PPR LYONS PRIDE CONSTRUCTION SYSTEMS, L.L.C., AND CENTURY INSURANCE GROUP** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING[1]

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Remand [Document No. 37] filed by Plaintiff Caldwell Memorial Hospital ("Caldwell"). The motion is opposed [Document No. 40]. For reasons stated below, Plaintiff's motion to remand is **DENIED**.

## BACKGROUND

This matter arises out of an alleged contract between Plaintiff Caldwell Memorial Hospital and Defendant Trimark Catastrophe Services, Inc. ("Trimark"). Caldwell filed a petition for damages in the 37th Judicial District Court, Parish of Caldwell, State of Louisiana. According to the petition, shortly after a hailstorm occurring on March 13, 2005, Caldwell entered into a contract with Trimark under which Trimark agreed to perform repairs as a general contractor to Caldwell's property damaged by the hailstorm. The repairs included replacement of the roofs and associated structures of various buildings at the facility. Caldwell alleges that

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Trimark subcontracted all or part of the roof replacement and other work to Defendants PPR Lyons Pride Construction Systems, L.L.C. ("Lyons Pride"). According to Caldwell, during the course of the work, Lyons Pride and/or its employees, subcontractors, or agents left the roof uncovered, exposing the hospital to the elements and allowing water intrusion. Allegedly, on or about July 9, 2005, a rainstorm occurred while the roof was left unprotected, resulting in extensive property damage to Caldwell's CT equipment, CT room, and other property; a significant business interruption loss; and other damages. Caldwell further alleges that, on or about July 21, 2005, another rainstorm occurred during which water intruded through the roof, thereby disrupting an electrical service panel which caused a fire that destroyed the electrical services to the hospital and caused additional extensive property damage and business interruption loss. Caldwell claims that such damage was the result of the negligence, defective workmanship, breach of contract, faulty construction, and fault installation of the roof by Trimark, Lyons Pride, and/or their agents, employees, or subcontractors, including but not limited to the failure to cap an electrical mast. The complaint also states that the roofs replaced by the defendants have continued to leak and experience problems resulting in additional property damage, repair costs, inspection costs, future anticipated remedial work, and other damages to the hospital.

Additionally, Caldwell alleges that, as a result of the above-described actions of the defendants, it has sustained damages and/or not received products, items, or work promised, including the following: (1) Defendants failed to provide the type, style, and quality of roof required by the contract and specified in Defendant's bid; (2) Defendants failed to provide warranties to the roofs and construction work promised to Caldwell; (3) Defendants failed to provide the gutter systems, gravel, and other items required by the contract and specified in the

bid; and (4) Defendants failed to provide scaffolding, barricades, fencing, and numerous other equipment, supplies, work, and other items required by the contract and specified in the bid. Caldwell further alleges that it has been forced to pay other contractors and incur additional expenses for numerous repairs, replacement, and remedial work to complete and/or fix items left unfinished or work improperly performed by the defendants. The complaint states that Caldwell's insurer, Fireman's Fund Insurance Co., reimbursed the hospital for some, but not all, of the damages allegedly caused by the defendants, subject to the deductible provisions of the policy, resulting in multiple losses of deductible. Accordingly, Caldwell seeks damages for negligent and defective workmanship, construction, installation and supervision; failure to protect the building from water intrusion; breach of contract and breach of all implied warranties and written warranties; improper supervision of the subcontracts; failure to comply with industry standards, and all other acts of negligence which will be shown at trial.

On August 2, 2006, the case was removed to this Court and, subsequently was consolidated with a subrogation action filed by Fireman's Fund. On January 4, 2007, Caldwell filed this motion to remand for lack of subject matter jurisdiction, claiming that the defendants have failed to show that the amount in controversy exceeds $75,000.

## LAW AND ANALYSIS

"Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000) (citing 28 U.S.C. § 1441(a)). "District courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." *Id.* (citing 28 U.S.C. § 1332(a)(1)). As it is undisputed in this case that diversity of citizenship exists, the

only issue to be decided is whether the amount in controversy requirement is met so as to confer jurisdiction of the plaintiffs' action on this Court.

The Fifth Circuit has ". . . established a clear analytical framework for resolving disputes concerning the amount in controversy for actions removed from Louisiana state courts pursuant to § 1332(a)(1)." *Id.* (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). "Because plaintiffs in Louisiana state courts, by law, may not specify the numerical value of claimed damages, 3 La.Code Civ.P. art. 893 (West Supp. 2000), the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *Id.* "A defendant can prove the amount either by showing that it is facially apparent from the nature and amount of the claims that they are likely to be above the requisite amount, or by setting forth the facts which would support a finding of the requisite amount." *Robinson v. Delchamps, Inc.*, 1998 WL 352131, *1 (E.D.La. June 30, 1998) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

"Once a defendant has made such a showing, diversity jurisdiction may be defeated only if the plaintiff demonstrates to a 'legal certainty' that the amount in controversy does not exceed $75,000." *Franco v. Teasdale*, 2006 WL 2224743, *1 (E.D.La. Aug. 1, 2006) (citing *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002)). "One such way for a plaintiff to satisfy the legal certainty test is to file a binding stipulation or affidavit with the *original* complaint." *Franco* at *1 (emphasis in original). However, because jurisdiction is determined at the time of removal, ". . . post-removal affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal." *Gebbia*, 233 F.3d at 883 (citing *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559 (5th Cir. 1993). Accordingly, ". . . if it is facially apparent from the

petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (U.S. 1938); *ANPAC*, 988 F.2d at 565).

In the instant case, the undersigned finds that it is facially apparent from the nature and amount of Caldwell's claims that the requisite jurisdictional amount is met. Caldwell asserts claims for damaged CT equipment; a damaged CT room; fire damage; destroyed electrical services; two instances of significant and extensive business interruption loss; ongoing roof leaks and property damage; repair costs; inspection costs; and future anticipated remedial work. In the context of a hospital setting, these damages are clearly significant and easily exceed $75,000 on their own. In addition, Caldwell's complaint alleges independent damages for Trimark/Lyons Pride's alleged failure to perform the contract as required, including failure to provide the type, style, and quality of roof specified; failure to provide warranties; and failure to provide gutter systems, gravel, scaffolding, fencing, etc. Finally, Caldwell asserts damages in the form of multiple losses of deductible on the items of damage reimbursed by Fireman's Fund. Therefore, it is facially apparent that the amount in controversy in this action exceeds $75,000, and Caldwell has come forward with no evidence establishing to a legal certainty that it can recover no more than such amount.[2]

---

[2] Although the undersigned finds that it is facially apparent that Caldwell's claimed damages exceed $75,000, it is also worth noting that the defendants have submitted facts indicating that the requisite jurisdictional amount is satisfied. According to the defendants, the contract between Trimark and Fireman's Fund/Caldwell to repair the damage caused by the hailstorm allocates $143,862.58 to roofing work; $14,211.12 to soffit, fascia, and gutter work; and $4,537.44 to scaffolding. The defendants also submit that the work on the "hospital"

Accordingly, this Court finds that Defendants have met their burden of proving that the amount in controversy at the time of the removal exceeded the jurisdictional amount; therefore, jurisdiction is proper and Plaintiffs' Motion to Remand [Document No. 37] is hereby **DENIED.**

**THUS DONE AND SIGNED** this 8th Day of February, 2007, in Monroe, Louisiana.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

building, which included removing and replacing the roof, gravel ballast, gutters, totaled $178,260. These figures are corroborated by the damage estimate prepared by Fireman's Fund following the hailstorm and are undisputed by Caldwell. Clearly, then, the amount of work on the roof and gutters of the hospital contemplated by the initial contract for hail damage exceeded $75,000. Also, the subcontracts between Trimark and Lyons Pride state amounts of $114,991.00 for roof replacement and $25,845.00 for gutter and downspout replacement. Thus, Caldwell's claim in this suit arising out of the alleged breach of the obligation to perform such work necessarily implicates the requisite the jurisdictional amount. Moreover, the aforementioned amounts only consider reimbursement for the roofing work Caldwell alleges was done incorrectly or not done at all; they do not even take into account the consequential damages that Caldwell is claiming, i.e. property damage, business interruption loss.

Caldwell argues that it is not facially apparent that its claims exceed $75,000 because the petition specifically states that it has been reimbursed by Fireman's Fund for some of the damages incurred. However, the complaint does not provide a specific amount for which Caldwell has been reimbursed nor does Caldwell cite any authority supporting the proposition that any amount of reimbursement should be excluded from the claimed damages for amount-in-controversy purposes. *See Small v. Baloise Ins. Co. of America*, 753 So.2d 234, 247 (La.App. 4 Cir. 1998) (stating that subrogation must be *proven* before the plaintiff is prevented from recovering the subrogated amount) (emphasis added).